1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   CALTEX PLASTICS, INC.,        )   2:12-cv-10033 RSWL
                                    )   (JEMx)
13                                  )
                    Plaintiff,      )
14                                  )   **RULING & ORDER re: BENCH**
                                    )   **TRIAL**
15        v.                        )
                                    )
16                                  )
     ELKAY PLASTICS COMPANY,        )
17   INC.,                          )
                                    )
18                                  )
                    Defendant.      )
19                                  )
                                    )
20                                  )
                                    )
21                                  )
                                    )
22   _____)

23        On November 18, 2014, the above matter commenced in

24   a bench trial before this Court.  Plaintiff Caltex

25   Plastics, Inc. ("Plaintiff" or "Caltex") brings this

26   Action against Defendant Elkay Plastics Co.

27   ("Defendant" or "Elkay") for false advertising in

28   violation of the Lanham Act, 15 U.S.C. § 1125(a), and

                                    1

California's Business & Professions Code §§ 17200 and 17500.  Compl. ¶ 1.  Plaintiff alleges that Defendant has falsely represented that Defendant's StratoGrey product line "meet[s]" a certain military specification.  Id.  Plaintiff seeks actual damages in the amount of $3,030,911.33.  Pl.'s Closing Trial Br. ¶¶ 7-8.  Plaintiff also seeks treble damages, id. at 32:17-25, and attorneys' fees, id. at 34:24-35:2.  Defendant seeks judgment in its favor and attorneys' fees.  Def.'s Closing Trial Br. 27:1-19.

Having received, reviewed, and considered the evidence presented, as well as the Parties' arguments at trial, the Court makes the following ruling:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Judgment be entered in favor of Defendant Elkay Plastics Company, Inc., and the parties shall bear their own costs and fees.

## FINDINGS OF FACT

1. Plaintiff Caltex is a California corporation that manufactures, markets, and distributes polyethylene bags and laminated products for military and electronics.  Compl. ¶¶ 2-3; Trial Tr. 150:14-15.

2. Plaintiff's packaging products include "flexible military packaging material" that is qualified by the Department of the Navy as meeting the Department of Defense's ("DOD") MIL 81705 Type III specification for "flexible barrier materials, often supplied as bags."  Pretrial Conference Order 3:4-22 (undisputed fact).

3. The term "MIL-PRF-81705" (formerly "MIL-B-81705") is a military specification defined by the DOD that establishes qualification requirements for certain types of military packaging for electronic components. Pretrial Conference Order 3:4-22 (undisputed fact); Magnifico Dep. 12:6-21, ECF No. 56.

4. The DOD maintains a Qualified Products List (QPL) for products that have been submitted to the DOD for qualification and have met the military specification's qualification requirements after government testing. Magnifico Dep. 12:6-14:11; 20:12-16.

5. If an entity wants to submit a product for qualification, the entity must contact the DOD to begin the process of qualification. Magnifico Dep. 20:12-22:21.

6. The only way an entity can be placed on the QPL is if the entity's product has been tested by the government and approved by the government for qualification. Magnifico Dep. 28:7-19. No entity can self-qualify; for qualification and placement on the QPL, the product must be qualified by the government. Id. at 47:4-20.

7. Prior to submitting a product to the DOD for qualification, an entity can find the specific testing requirements in the military specification, and the entity must test its product to ensure that the product passes the tests before the DOD will begin testing the

product for qualification.  Magnifico Dep. 22:4-23:1,
27:15-28:6.

8. When a military specification has a
qualification requirement, products with that military
specification may be purchased by the military from
only "qualified" manufacturers listed on the QPL.
Magnifico Dep. 15:10-16:18.

9. Anyone can access the QPL on the Internet.
Magnifico Dep. 50:8-51:3.

10. The Department of the Navy (DON) is the only
entity that can qualify products under the MIL-PRF-
81705 specification.  Pretrial Conference Order 3:4-22
(undisputed facts).

11. Plaintiff's MIL-PRF-81705 Type III products
have been approved by the DON and were placed on the
DOD's QPL in February 2010.  Pretrial Conference Order
3:4-22 (undisputed facts); Magnifico Dep. Ex. 1.

12. At present, Plaintiff Caltex is the only
manufacturer that has been qualified by the DON and
placed on the QPL for MIL-PRF-81705 Type III product.
Pretrial Conference Order 3:4-22 (undisputed facts).

13. There had not been a qualified manufacturer for
MIL 81705 Type III product for approximately ten years
prior to Caltex's qualification in February 2010.
Trial Tr. 154:7-155:2, 223:4-8, 225:3-15; Magnifico
Dep. 41:4-48:24, 54:12-57:5, 77:9-21, Exs. 2-3.

14. Mr. Magnifico of the DON sent out a problem
advisory, dated May 8, 2012, to the Government Industry

4

Data Exchange Program (GIDEP) to alert GIDEP members
that if defense contracts required qualified product
for MIL-PRF-81705 Type III product, such products
needed to be purchased only from qualified
manufacturers on the QPL and not from non-qualified
manufacturers who were claiming their product met the
MIL 81705 Type III requirements.  Magnifico Dep. 41:4-
47:20, Ex. 2.  Mr. Magnifico sent a similar letter,
dated July 23, 2012, to the DOD.  Magnifico Dep. 59:3-
66:15, Ex. 3.

   15. Defendant Elkay, a California corporation,
Def.'s Ans. ¶ 4, is a "master distributor of
polyethylene products" that sells its products solely
through distributors and has no direct sales.  Trial
Tr. 15:18-23, 16:2-3.

   16. Elkay advertises its products to its customer-
distributors via Elkay's catalogs and brochures, web
site, specification sheets, and Elkay-employed
consultants.  Trial Tr. 16:1-20.  Elkay has
approximately 4300 distributors.  Id. at 36:16-37:4.

   17. Elkay does not manufacture the StratoGrey
static shielding bags it sells.  5:19-20 (Trial Tr.
18:19-25, 21:13-16, 254:17-20).  Elkay's suppliers for
its StratoGrey static shielding bags are Shannon
Packaging and Techflex.  Trial Tr. 21:13-16, 48:4-9.

   18. At least since February 2010 when Caltex was
placed on the QPL for MIL 81705 Type III product and
until October 2012 when Elkay removed any reference to

81705 from its marketing materials, Elkay has
advertised via the Elkay website, Elkay catalogs and
brochures, and Elkay specification sheets that Elkay's
StratoGrey static shielding product line "meets the
electrostatic requirements for MIL 81705 Type III."
Trial Tr. 18:5-11; Trial Ex. 4.

19. Elkay has no independent evidence that its
StratoGrey static shielding product line "meets the
electrostatic requirements for MIL 81705 Type III," and
Elkay has not tested its StratoGrey bags to see if the
bags pass the qualification requirements for MIL 81705
Type III.   Trial Tr. 20:12-17, 24:20-27:14.

20. Elkay did not request its suppliers to prove to
Elkay that the StratoGrey bags met the MIL 81705 Type
III requirements.  Id. at 73:10-74:4, 77:2-9.

21. Plaintiff tested the Elkay bags via Senawang to
see if the Elkay bags met the MIL 81705 Type III
requirements.  Trial Tr. 238:16-24.

22. Elkay's StratoGrey static shielding bags have
not been qualified by the Department of Defense,
including the Department of the Navy, and are not
listed on the QPL.  Trial Tr. 18:14-15, 75:8-11.

23. There is no evidence that Elkay ever advertised
that its StratoGrey products were "qualified" by the
military or on the QPL list.  Cf. Pl.'s Reply Br. 7:13-
16.

24. Caltex sent Elkay a letter dated October 12,
2012, in which Caltex demanded that Elkay withdraw its

representations regarding the MIL-PRF-81705 specifications and give written notice to its customers that the Elkay products were not approved by the Department of Defense.  Trial Tr. 48:10-50:22; Trial Ex. 220.

25. In response to Caltex's letter to Elkay, Elkay stated in a letter dated October 31, 2012, that Elkay's statements "concerning the standards met by its moisture barrier bags were accurate," but Elkay nevertheless agreed to remove all references to "specification number 81705 from its website and printed materials pertaining to the barrier bags in question," and Elkay has since then refrained from making any such references.  Trial Tr. 50:6-54:12; Trial Ex. 221; see Trial Ex. 298.

## CONCLUSIONS OF LAW

Plaintiff's claims are for (1) False Advertising in violation of 15 U.S.C. § 1125(a); (2) False Advertising in violation of Cal. Bus. & Prof. Code § 17500; and (3) Unfair, Unlawful, or Fraudulent Trade Practices in violation of Cal. Bus. & Prof. Code § 17200.

**A.   False Advertising, 15 U.S.C. § 1125(a)**

To prove a prima facie case for false advertising in violation of 15 U.S.C. § 1125(a), a plaintiff must show:

(1) the defendant made a false statement either about the plaintiff's or its own product;

7

(2) the statement was made in a commercial
advertisement or promotion;

(3) the statement actually deceived or has the
tendency to deceive a substantial segment of its
audience;

(4) the deception is material, in that it is likely
to influence the purchasing decision;

(5) the defendant caused its false statement to
enter interstate commerce; and

(6) the plaintiff has been or is likely to be
injured as a result of the false statement, either
by direct diversion of sales from itself to the
defendant, or by a lessening of goodwill associated
with the plaintiff's product.

Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d
829, 835 n.4 (9th Cir. 2002) (citing Southland Sod
Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir.
1997)).

Plaintiff Caltex must first prove that Defendant
Elkay's advertisements that Elkay's StratoGrey product
"meets the electrostatic properties of MIL-B-81705,
Type III" are "false." Jarrow, 304 F.3d at 835 n.4.
"Falsity" can be proved by showing either that the
advertisement is "literally false" or, if not literally
false, that the representation is "likely to mislead or
confuse consumers," which requires proof, "by extrinsic
evidence," that the advertisements "tend to mislead or
confuse consumers." In re Century 21-RE/MAX Real

8

Estate Adver. Claims Litig., 882 F. Supp. 915, 922-23
(C.D. Cal. 1994); see Southland Sod Farms, 108 F.3d at
1139.

    1.   Literal Falsity

    Plaintiff states that "[t]he false advertising that
is the subject matter of this litigation" "involves the
representation by Elkay that its StratoGrey line of
static shielding products 'meets the electrostatic
requirements of MIL B-81705 Type III.'"  Pl.'s Reply
Br. 7:13-16.  Plaintiff asserts that such
advertisements by Elkay are "literally false."  Pl.'s
Closing Trial Br. 27:20-25.  To prove that Elkay's
advertisements are literally false, Plaintiff bears the
burden of proving, by *affirmative* evidence,[1] that
Elkay's StratoGrey products *do not* meet the
requirements for MIL 81705 Type III specification.

---

    [1] See Hansen Beverage Co. v. Vital Pharm., Inc., No. 08-cv-
1545-IEG, 2010 WL 1734960, at *4-*5 (S.D. Cal. Apr. 27, 2010)
(stating that "[b]ecause [the defendant] does not expressly
represent" that its advertising claim "is based on product
testing, or implicitly make that claim through visual
representations, [the plaintiff] must affirmatively prove that
the claim is false").  In this case, Elkay did not "expressly
represent" that it tested its Elkay bags or implicitly make a
claim of testing based on graphs or any sort of visual
representation; thus, Elkay's advertisement is less like an
"establishment claim" and more like a statement that "lacks
substantiation."  See Fraker v. Bayer Corp., No. 08-1564, 2009 WL
5865687, at *7-*9 (E.D. Cal. Oct. 6, 2009) (noting that in a case
for false advertising under the Lanham Act, the burden of proof
does not shift to the defendant to prove substantiation of
advertising claims because otherwise, a plaintiff could use a
false advertising claims to "shoehorn an allegation of violation
of the Federal Trade Commission Act," which does not allow
private causes of action).

Plaintiff proffers the following evidence to support its claim of "literal falsity": (1) only the Government can *qualify* a product as being a MIL SPEC 81705 Type III product approved for defense contracts, and (2) Elkay has no independent evidence that its StratoGrey bags meet the MIL 81705 Type III requirements.  Pl.'s Closing Trial Br. 27:20-31:19; Pl.'s Reply 2:8-4:19.

a.  <u>No Self-Qualification Argument</u>

Plaintiff first argues that Defendant's advertisements that its StratoGrey product "meets" the requirements of MIL 81705 Type III are "literally false" "since only the Department of the Navy can make that determination and Elkay's products were never qualified thereby."  Pl.'s Closing Trial Br. 27:20-25.

Plaintiff's argument is conflated and flawed: the fact that Elkay's products were not *qualified* by the DON does not prove that Elkay's StratoGrey products do not *meet* the testing requirements for MIL 81705 Type III specification.  Plaintiff's claim that "only the Department of the Navy" can determine whether a product meets the requirements for a military specification is unfounded and unsupported by any law, regulation, or evidence.

Plaintiff is essentially arguing that only "qualified" products (products tested by the government and placed on the DOD's QPL) can, in fact, "meet" MIL 81705 Type III qualification requirements.  <u>See</u> Pl.'s

Closing Trial Br. 27:20-25.  But the evidence at trial
proved otherwise: a product can "meet" the
qualification requirements of a military specification
without ever having been tested by the military.  <u>See</u>
Magnifico Dep. 12:6-14:11, 21:2-14, Ex. 2; Trial Tr.
153:19-154:6.  The only time the military must be
involved is to *qualify* a product.[2]

     To "meet" the MIL-PRF-81705 Type III qualification
requirements, a product must merely successfully
*perform* the required tests for the qualification, and
non-military entities can and do test products to see
if they pass the qualification tests.[3]  Trial Tr.
238:16-24, 154:4-6; Magnifico Dep. 22:4-23:1, 27:5-
28:15.  Thus, a product that has not been tested or
qualified by the military could very well still "meet"
the qualification requirements for a military
specification such as MIL-PRF-81705 Type III.

_____

     [2] Defendant Elkay did not advertise that its products were
"qualified" by the military or on the QPL, but only that its
StratoGrey static shielding bags met the requirements for MIL
81705 Type III.

     [3] Mr. Frank James Magnifico, Jr., Materials Engineer for the
Naval Air Warfare Center, Magnifico Dep. 4:17-5:5, testified in
his deposition that "if a company wants to make product X, and
product X has a military specification qualification requirement,
[the company] should at least have a copy of that specification.
[The specification] will detail all the requirements that [the
product] has to meet.  . . .  And you would have the – the
procedure would be in those – those test methods and then the
manufacturer, before submitting that product to us, would have to
have done all those tests and successfully passed them before we
would even begin testing a product."  Magnifico Dep. 22:4-21.

For example, a company must choose to submit its product to the DOD for testing in order for its product to be "qualified."  Magnifico Dep. 12:6-14:11, 21:2-14. A company that chooses not to submit its product to the DOD for testing may still manufacture or sell a product that does, in fact, "meet" the qualification requirements for a military specification, even if that product has not been tested by the military.  Plaintiff itself has proved that this can be so: Plaintiff admitted that it had the Elkay bags tested by Senawang to see if the Elkay bags, and other competitors' products, "met" the MIL 81705 Type III requirements. Trial Tr. 238:16-24; <u>see also</u> <u>id.</u> at 154:4-6; Magnifico Dep. 22:4-23:1, 27:5-28:15.  Thus, the Court rejects Plaintiff's argument that Elkay's advertisements are "literally false" because "only the Department of the Navy" can say when a product "meets" the testing requirements for MIL 81705 Type III specification.

> b.   No Independent Evidence Argument

Plaintiff argues that Elkay's advertisements are "literally false" because Elkay has "no independent evidence" that its StratoGrey bags meet the MIL 81705 Type III requirements.  Pl.'s Reply 3:15-18. Plaintiff's argument cannot prevail because it is a "lack of substantiation" argument, and a false advertising claim cannot be proved on "lack of

substantiation" grounds.[4]  <u>Fraker v. Bayer Corp.</u>, No. 08-1564, 2009 WL 5865687, at *7-*9 (E.D. Cal. Oct. 6, 2009) (noting that, in a case for false advertising under the Lanham Act, the burden of proof does not shift to the defendant to prove substantiation of advertising claims; otherwise, a plaintiff could use a false advertising claim to "shoehorn an allegation of violation of the Federal Trade Commission Act," which does not allow private causes of action).

Defendant has maintained that its advertisements were true.  Def.'s Closing Trial Br. 5:21-6:12, 8:2-8. It is irrelevant that Defendant failed to test its own bags; Defendant does not have the burden of proof and

---

[4] <u>Fraker v. Bayer Corp.</u>, No. 08-1564, 2009 WL 5865687, at *8 (E.D. Cal. Oct. 6, 2009) ("Plaintiff has provided no authority for the proposition that the absence of substantiation of an advertising claim is, itself, falsity or somehow misleading. . . . [T]he court is unwilling to make that leap.  If Plaintiff is going to maintain an action against Defendant for false or misleading advertising, then Plaintiff will be required to adduce evidence sufficient . . . to show that Defendant's advertising claims with respect to Product are actually false; not simply that they are not backed up by scientific evidence."); <u>see</u> <u>Eckler v. Wal-Mart Stores, Inc.</u>, No. 12-cv-727-LAB-MDD, 2012 WL 5382218, at *3 n.3 (S.D. Cal. Nov. 1, 2012) (noting that "lack of substantiation" claims are "distinguishable from a case, like this one, in which plaintiffs point to studies that they claim actually disprove a product's claims"); <u>Dabish v. Infinitelabs, LLC</u>, No. 13-cv-2048, 2014 WL 4658754, at *2 (S.D. Cal. Sept. 17, 2014) (listing Ninth Circuit courts that have considered "lack of substantiation" allegations in the context of false advertising claims); <u>Hughes v. Ester C Co.</u>, 930 F. Supp. 2d 439, 456-59 (E.D.N.Y. 2013) (discussing California district courts' consideration of "lack of substantiation" arguments in false advertising cases and concluding that "'merely because a fact is unsupported by clinical tests does not make it untrue'").

is thus not required to show that its advertisements are substantiated by testing.  <u>Id.</u>  As <u>Fraker</u> points out, "the government, representing the Federal Trade Commission, can sue an advertiser for making unsubstantiated advertising claims; a private plaintiff cannot."  <u>Fraker</u>, 2009 WL 5865687, at *8.  A private litigant asserting false or misleading advertising "has the burden to plead and prove facts that show" that the defendant's advertising claims "are *false or misleading*," not merely unsubstantiated.  <u>Id.</u>; <u>see Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.</u>, 902 F.2d 222 (3d Cir. 1990) ("[A] Lanham Act plaintiff 'bears the burden of showing that a challenged advertisement is false or misleading, not merely that it is unsubstantiated by acceptable tests or other proof.'").

     In sum, because Plaintiff has not provided affirmative evidence that Defendant's StratoGrey bags do not meet the testing requirements of MIL 81705 Type III, Plaintiff's allegation of "literal falsity" fails.  Thus, to prevail on its false advertising claim, Plaintiff must show that Defendant's advertisements were "misleading."

     2.  <u>Misleading</u>

     Falsity "can be established . . . by showing that although the statement was 'literally true[,]' it was nonetheless 'likely to mislead or confuse consumers' as evidenced by consumer surveys."  <u>Mutual Pharm. Co. v. Ivax Pharm., Inc.</u>, 459 F. Supp. 2d 925, 932 (C.D. Cal.

14

2006); <u>Southland Sod Farms</u>, 108 F.3d at 1139; <u>see</u>
<u>CytoSport</u>, 894 F. Supp. 2d at 1295 (E.D. Cal. 2012).
Extrinsic proof of consumer deception is required for a
"true but misleading" false advertising claim because
"whether a representation is impliedly misleading is
not something that is readily susceptible to being
evaluated absent 'evidence [showing] actual consumer
deception.'"   <u>Mutual Pharm.</u>, 459 F. Supp. 2d at 932;
<u>see</u> <u>William H. Morris Co. v. Grp. W, Inc.</u>, 66 F.3d 255,
258 (9th Cir. 1995) ("Where a statement is not
literally false and is only misleading in context, . .
. proof that the advertising actually conveyed the
implied message and thereby deceived a significant
portion of the recipients becomes critical."); <u>Zeltiq</u>
<u>Aesthetics, Inc. v. BTL Indus., Inc.</u>, No. 13-cv-05473-
JCS, 2014 WL 1245222, at *8 (N.D. Cal. Mar. 25, 2014).

Here, Defendant's representations that its
StratoGrey bags met the MIL 81705 requirements could
mislead consumers to believe that the Elkay StratoGrey
bags were actually qualified by the military; but it is
Plaintiff's burden to show proof of customer deception.
<u>Mutual Pharm.</u>, 459 F. Supp. 2d at 932.  The only
arguable evidence of consumer deception provided by
Plaintiff is the testimony of Caltex's witness, Mr. Jim
Higgs, that Caltex "was told numerous times that
[customers] already were getting material that meets
the requirements and, you know, 'Why am I going to pay
you 40 percent or more for a product that we're already

15

being told that already meets the requirement?'"  Trial Tr. 156:24-157:9.  However, this testimony does not prove consumer deception because the statement does not show that customers believed that Elkay's products were "qualified" by the military or were on the QPL list, but only that there were other, cheaper products on the market that "met" the MIL 81705 testing requirements, and Plaintiff has not shown such a belief to be false.

Plaintiff does provide evidence of confusion among the defense community regarding the DOD's qualification requirements for MIL 81705 Type III product once Caltex was qualified in February 2010.  Trial Tr. 223:4-8. However, the evidence clearly shows that this consumer confusion was not caused by Elkay's advertising, but by the DOD's failure to inform the defense-related community of the qualification requirements for MIL 81705 Type III product.[5]  Plaintiff's evidence does not

---

[5] See Trial Tr. 154:7-156:3; 217:11-228:10; see id. at 223:4-8 ("'We are hearing that folks will continue using the commercial static shielding materials and don't believe they need to use the approved film.  It's been ten years since the Type III has been on the approved list, so they've been using commercial materials that weren't approved.'"); see id. at 239:15-240:1 (When asked why Caltex filed the lawsuit against Elkay, Mr. Higgs, testified that Caltex wanted "to basically set the record straight so people understand that they need to use a qualified product that meets all the specifications" and agreed that the lawsuit was "part of Caltex's overall effort to advise the defense contractor industry that they need to use qualified product"); see id. at 225:3-15 (Mr. Higgs testifying that he emailed Mr. Magnifico of the DON on April 27, 2010, "asking him [if] there [is] anything [Mr. Magnifico] can do to help get the word out that Caltex is the approved MIL SPEC for 81705 III"). Mr. Magnifico testified that in the Government Industry Data

show that consumers thought Elkay's products were qualified or on the QPL, or that consumers were led to believe any other falsity due to Elkay's advertisements.

Not necessary but further convincing, the following evidence lessens the likelihood of consumer deception: (1) anyone can access the QPL online to check if a product is qualified, Magnifico Dep. 30:11-14, 50:8-51:3; and (2) consumers purchasing static shielding products are arguably sophisticated and thus less likely to be deceived, especially in light of the publicly accessible QPL, see Trial Tr. 219:3-9; Magnifico Dep. 13:12-14:11.  See, e.g., Bober v. Glaxo Wellcome PLC, 246 F.3d 934, 939 (7th Cir. 2001) (when considering a similar lack-of-substantiation claim, noting that not only was there no evidence of falsity,

---

Exchange Program (GIDEP) problem advisory of May 8, 2012, he sought to clarify that a product that merely "meets the requirements of MIL-PRF-81705" is not necessarily a "qualified" product on the QPL and that "qualified manufacturers are detailed on the qualified products list."  Magnifico Dep. 41:4-47:20. There was a "misconception" about the qualification requirements for MIL 81705, and the GIDEP problem advisory was sent "to get people a little bit more calibrated into what they really need to know."  Id.  The problem advisory requested "that industry and government material buyers verify manufacturers listing on the QP," "that industry and government QA personnel rereview contract packaging and ESD control program requirements," and that "[r]eceiving personnel . . . verify materials received and convey noncompliance immediately."  Id. at 54:12-57:5; see also id. at 77:9-21 ("Existing contracts may still allow use of the non-mil spec material.  Folks have to be educated in their buying habits. I continually stress the use of qualified products at all meetings and conferences that I attend.").

but "there was significant information available to consumers . . . providing accurate information . . . ," thereby dispelling "any tendency to deceive that the statements at issue might otherwise have had").

The Court finds that Plaintiff has failed to prove falsity, the first element of a false advertising claim under 15 U.S.C. § 1125(a), and therefore cannot prevail on its federal false advertising claim.

## B. **False Advertising, Cal. Bus. & Prof. Code § 17500**

Section 17500 of the California Business & Professions Code is California's false advertising law and prohibits any advertising that is "untrue or misleading" to the "reasonable consumer." <u>People v. Forest E. Olson, Inc.</u>, 186 Cal. Rptr. 804, 806 (Cal. Ct. App. 1982); Cal. Bus. & Prof. Code § 17500; <u>see Consumer Advocates v. Echostar Satellite Corp.</u>, 8 Cal. Rptr. 3d 22, 29 (Cal. Ct. App. 2003). Under the "reasonable consumer" standard, a plaintiff must "show that members of the public are likely to be deceived."[6] <u>Williams v. Gerber Prods. Co.</u>, 552 F.3d 934, 938 (9th

---

[6] While Section 17500 "prohibits negligent as well as intentional dissemination of misleading advertising" and thus "imposes a duty of [reasonable] investigation," the duty of investigation is imposed *only if* the advertising is first proven to be false or misleading. <u>See People v. Forest E. Olson, Inc.</u>, 186 cal. Rptr. 804, 807 (Cal. Ct. App. 1982); <u>People v. Lynam</u>, 61 Cal. Rptr. 800 (Cal. Ct. App. 1967) (stating a plaintiff must allege: "(1) statements in the advertising are untrue or misleading, and (2) defendant knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading.").

Cir. 2008) (internal quotation marks omitted); <u>Bank of West v. Sup. Ct.</u>, 833 P.2d 545 (Cal. 1992); <u>In re Tobacco II Cases</u>, 207 P.3d 20 (Cal. 2009).

"In an action for false advertising under [California law], the plaintiff 'bears the burden of proving the defendant's advertising claim is false or misleading.'" <u>Stanley</u>, 2012 WL 1132920, at *3 (citing <u>Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.</u>, 133 Cal. Rptr. 2d 207 (Cal. Ct. App. 2003)). California courts have held that "lack-of-substantiation arguments" are "insufficient, on their own, to support a false or misleading advertising claim." <u>Hughes v. Ester C Co.</u>, 930 F. Supp. 2d 439 (E.D.N.Y. 2013); <u>see</u> <u>In re Clorox Consumer Litig.</u>, 894 F. Supp. 2d 1224, 1231-32 (N.D. Cal. 2012); <u>Stanley v. Bayer Healthcare LLC</u>, No. 11-cv-862-IEG, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012); <u>King</u>, 133 Cal. Rptr. 2d 207, 214-16 (Cal. Ct. App. 2003).

In <u>Fraker</u>, the district court dismissed the plaintiff's claims for false or misleading advertising under Cal. Bus. & Prof. Code §§ 17500 and 17200 because the plaintiff had failed to "prove facts that show that the claims that Defendant made in connection with product are false or misleading," as the plaintiff's lack of substantiation claim was not sufficient to prove falsity or deception. <u>Fraker</u>, 2009 WL 5865687, at *8-*9. Similarly, in <u>Stanley</u>, the district court rejected the plaintiff's false advertising-related

claims under Cal. Bus. & Prof. Code §§ 17200 and 17500 even though it was "undisputed that [the] Defendant did not independently conduct clinical studies" of its product.  2012 WL 1132920, at *5 n.4.  The plaintiff in Stanley failed to provide evidence showing that the defendant's advertisements were "actually false" or would "mislead a reasonable consumer."  Id. at *5.

As in Stanley, and as discussed above, Plaintiff has not proved that Defendant's advertisements of its StratoGrey bags were false or were likely to "mislead a reasonable consumer" into believing that the StratoGrey bags were qualified by the military or any other false belief.  Thus, Plaintiff cannot prevail on its state-law false advertising claim under Cal. Bus. & Prof. Code § 17500.

## C.  Unfair Trade Practices, Cal. Bus. & Prof. Code § 17200.

"California's Unfair Competition Law ("UCL") prohibits any 'unlawful, unfair or fraudulent business act or practice.'"  Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008); Cal. Bus. & Prof. Code § 17200.  To state a cause of action under the UCL, the plaintiff must allege either an unlawful act, an "unfair" act, or a fraudulent act.  See Williams, 552 F.3d 934, 938; VP Racing Fuels, Inc. v. Gen. Petroleum Corp., 673 F. Supp. 2d 1073, 1086-88 (E.D. Cal. 2009).

To claim a violation of the UCL based on an "unlawful" act, a plaintiff must prove the defendant

violated some underlying law. <u>VP Racing</u>, 673 F. Supp. 2d at 1086-88.  Plaintiff's false advertising claims under the Lanham Act and Cal. Bus. & Prof. Code § 17500 fail, and Plaintiff asserts no other legal violation to support its UCL claim under the "unlawful" prong.

There is at least a three-way split among California appellate courts as to the proper standard for an "unfair" act under the UCL. <u>Graham v. Bank of Am., N.A.</u>, 172 Cal. Rptr. 3d 218, 233 (Cal. Ct. App. 2014).  Upon review of the various tests, the Court finds that Plaintiff has not proved an "unfair" business act. <u>See</u> <u>id.</u>

A "fraudulent act" under the UCL "may include a false statement, or one which, though strictly accurate, nonetheless has the likely effect of misleading or deceiving the public." <u>Zeltiq Aesthetics, Inc. v. BTL Indus., Inc.</u>, No. 13-cv-05473-JCS, 2014 WL 1245222, at *9 (N.D. Cal. Mar. 25, 2014) (citing <u>Garcia v. Sony Computer Entm't Am., LLC</u>, 859 F. Supp. 2d 1056, 1062 (N.D. Cal. 2012)).  Because Plaintiff has not provided sufficient evidence to show that customers were actually deceived by Elkay's advertisements, Plaintiff cannot prevail under the fraudulent prong of the UCL.[7]

---

[7] <u>Zeltiq Aesthetics</u>, 2014 WL 1245222, at *10 (noting that though the plaintiff provided evidence showing that the defendant's advertising could mislead customers to think the product was FDA cleared, the plaintiff could not prevail because it had failed to submit any evidence showing that customers were

**D.  Attorney Fees & Costs**

Section 1117(a) of the Lanham Act states that the "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  An "exceptional" case warranting an award of attorney fees is one in which the non-prevailing party's actions were "'groundless, unreasonable, vexatious, or pursued in bad faith.'" Gracie v. Gracie, 217 F.3d 1060, 1071 (9th Cir. 2000).

Defendant requests an award of attorney fees and costs pursuant to 15 U.S.C. § 1117(a), arguing that this case is "exceptional" in that "Caltex acted in bad faith by filing suit against Elkay even though Elkay ceased the alleged wrongful conduct" and "attempt[ed] to hold Elkay liable for claims that Caltex knew were true and which were released pursuant to Caltex's previous settlement with 3M Company." Def.'s Closing Trial Br. 27:1-14.  The Court does not find that Plaintiff's claims against Defendant were "groundless, unreasonable, vexatious, or pursued in bad faith." Thus, Defendant's request for attorney fees and costs under 15 U.S.C. § 1117(a) is **DENIED**.

---

*actually* deceived by the defendant's advertisements, and rejecting "a general claim of deceptive impact" when the plaintiff's evidence showed only that customers in general would presume the product was FDA cleared and when the plaintiff did not present evidence that the customers "who actually purchase[d] the [product] . . . believed it was FDA cleared"; also stating that the sophistication of the customers made it unlikely that the customers would be deceived).

1

## CONCLUSION

2  Because Plaintiff has failed to prove its three
3  claims against Defendant, Judgment is entered in favor
4  of Defendant.   The parties shall bear their own costs
5  and fees.

6

7  **IT IS SO ORDERED.**

8  DATED: February 4, 2015

RONALD S.W. LEW
_____
9  **HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23